**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

PETER GODINO,

  Plaintiff,

CASE NO.:

-VS-

CONN APPLIANCES, INC.,

  Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Peter Godino (hereinafter "Plaintiff"), sues Defendant, Conn Appliances, Inc. (hereinafter "Conn"), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA").

**INTRODUCTION**

1. In describing the importance of the TCPA, Senator Hollings, the TCPA's sponsor, said "I echo Supreme Court Justice Louis Brandeis, who wrote 100 years ago that 'the right to be left alone is the most comprehensive of rights and the one most valued by civilized man.'" 137 Cong. Rec. 30.821 (1991).

2. As the Seventh Circuit Court of Appeals wrote: "No one can deny the legitimacy of the state's goal: preventing the phone (at home or in one's pocket) from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious." *Patriotic Veterans v. Zoeller,* 845 F.3d 303, 305-306 (7th Cir. 2017).

3. Conn never had Plaintiff's express consent to place automated calls, and yet repeatedly made unsolicited calls to Plaintiff's cellular telephone,

1

even after Plaintiff demanded the calls stop, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). Conn made unauthorized and illegal calls to Plaintiff's cellular telephone using an automatic telephone dialing system ("ATDS") including a predictive dialer or pre-recorded voice for the purpose of attempting to contact a third party whom Plaintiff does not currently, nor has ever known.

## JURISDICTION AND VENUE

4. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

5. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

6. The alleged violations described herein occurred in Sarasota County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2) as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred and where the Plaintiff resides.

7. Under Florida's long-arm statute, a corporation submits itself to the jurisdiction of the court by committing a tortious act within the state. Here, the Defendant has repeatedly committed the tortious acts of violating the TCPA and FCCPA within the State of Florida by placing calls to a Florida resident on a Tampa-based (813) cellular telephone number while Plaintiff resided in the state of Florida. *See* Fla. Stat. § 48.193.

## FACTUAL ALLEGATIONS

8. Plaintiff is a natural person, and citizen of the State of Florida, residing in North Port, Florida.

9. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

10. Conn is a corporation with its principal place of business located at 4055 Technology Forest Boulevard, Suite 210, The Woodlands, Texas 77381.

11. Conn called Plaintiff repeatedly and continuously from its Noble Systems automatic telephone dialing system in an attempt to find someone by the name of "Lisa" whom Plaintiff does not know.

12. Conn's Noble Systems automatic telephone dialing system dials numbers automatically from a list of numbers, with no human intervention involved at the time of dialing, and is an automatic telephone dialing system as defined by the Telephone Consumer Protection Act, 47 U.S.C. § 227(a)(1) and the Federal Communications Commission's (FCC's) 2003 Order regarding the TCPA. See *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14092 (2003); *Adams v. Ocwen*, Case No. 18-81028, Dkt. No. 23 (M.D.Fl. Oct. 29, 2018).

13. Conn's ATDS dials telephone numbers automatically from a list of numbers, with no human intervention involved at the time of dialing, and is an automatic telephone dialing system as defined by the Telephone Consumer Protection Act, 47 U.S.C. § 227(a)(1). *Marks v. Crunch San Diego, LLC*, No. 14-56834, 2018 U.S. App. LEXIS 26883 (9th Cir. Sept. 20, 2018).

14. An essential component of Conn's ATDS is that it uses a .csv file to upload numbers on to the system. Within this .csv file, Conn is capable of generating random or sequential numbers to be dialed without any human intervention.

15. In addition, Conn called Plaintiff in a "Broadcast" campaign using both an artificial voice and pre-recorded messages as defined by the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*

16. In a broadcast campaign, the system automatically calls customers with no human being involved at the time of dialing. If a customer answers a call made in this mode, he will be automatically be connected to an artificial voice message through an Interactive Voice Response system (IVR). Furthermore, in this mode Conn has the option of leaving a pre-recorded message for the called party if it recognizes a voicemail.

17. Plaintiff has received pre-recorded messages from Conn.

18. Conn also used its ATDS in a "Predictive" campaign to call Plaintiff's cellular telephone number.

19. In a predictive campaign the system automatically calls customers from a list of numbers with no human being involved at the time of dialing. If a customer answers a call made in this mode, the system will automatically transfer that caller to an available agent who will field the call.

20. At the time of dialing, agents fielding broadcast or predictive mode calls do not know what numbers are being dialed by the system, as the computer is randomly or sequentially dialing numbers without human intervention.

21. Agents only ever become aware of a customer being called if that customer answers and is then automatically transferred to the agent. At that time, the customer's

demographic information automatically populates on the agent's computer screen. Prior to this, agents have no idea who the system is auto-dialing.

22. Plaintiff also received "abandoned calls" from Conn.

23. Abandoned calls occur when Conn's automated system calls more customers than it has agents available, and as a result a customer who answers hears nothing but dead air, as the Noble Systems automatic telephone dialing system is unable to transfer the call it dialed to a human being.

24. In total, Conn uses its ATDS to make over 600,000 outbound calls per day.

25. Plaintiff is the subscriber, regular user, and carrier of the cellular telephone number (813) ***-1205 and was the called party and recipient of Conn's calls.

26. Conn placed hundreds of automated calls to Plaintiff's cellular telephone number (813) ***-1205 in an attempt to locate an unspecified person known only as "Lisa."

27. Conn intentionally directed calls at Plaintiff's Tampa Bay area based (813) cellular telephone number.

28. Plaintiff does not have any business dealings or accounts with Conn nor has he ever done any business or possessed any account with Conn.

29. Plaintiff has never given his express consent to have his cellular telephone be called by Conn.

30. On several occasions since Conn's campaign of harassing automated calls began, Plaintiff has instructed Conn's agent(s) to stop calling his aforementioned cellular telephone.

31. Unfortunately, no matter how many times Plaintiff asked for the calls to stop, Conn continued to harass Plaintiff by bombarding him with automated calls, including calls utilizing pre-recorded messages.

32. Conn had no legitimate purpose in calling that many times, especially since Conn never had any express consent from Plaintiff to call, which is compounded by the fact Plaintiff repeatedly asked them to stop. Rather, Conn displayed a pattern of behavior that can only be described as an intentional and willful attempt to harass and abuse the Plaintiff.

33. Plaintiff recalls approximately twenty (20) occasions in which he answered a call from Conn, stayed on the line until an agent answered, and instructed the agent to cease calling his cellular telephone.

34. Despite multiple requests for the calls to stop, Conn has continued to bombard Plaintiff with unwanted and harassing automated calls, also known as "robo-calls".

35. Due to the high volume of calls Conn placed to Plaintiff's cellular telephone, as well as due to how many times he spoke to them, Plaintiff does not recall with specificity every single conversation he had with Conn.

36. In addition to repeatedly informing Conn's agents that he wished for the calls to stop and that they were calling the wrong number, Plaintiff additionally sent Conn several written requests for cessation.

37. On or about March 7, 2019 at 1:15 PM, Plaintiff went to Conn's website and sent Conn an email (to which he received confirmation #820765 as to his submittal) which read, in part: "I have asked numerous times to be taken off your list. Yet you call again."

38. On or about March 7, 2019 at 4:49 PM, a representative from Conn known only as "Ladayzsia" emailed Plaintiff back stating in part: "I do apologize for the calls, when I look up the number you provided 813-***-1205 no information comes up. You should not receive any more calls." (Plaintiff's number redacted for purposes of filing)

6

39. Despite Conn stating they have no information on Plaintiff and that the calls would stop, the calls persisted. In fact the following day, on or about, March 8, 2019, Conn placed eight (8) more robo-calls calls to Plaintiff from 727-219-1684 at 10:48 AM, 10:52 AM, 10:54 AM, 11:32 AM, 11:33 AM, 1:46 PM, 4:45 PM and 5:05 PM.

40. In or about March 19, 2019, Plaintiff went on Conn's Facebook page and sent the company a message, including an attachment of a screen shot of some of the calls Conn had placed to his cellular telephone, and stated: "Stop calling me. Here is a screenshot from just today and how many times you called me and hung up. I have asked you to take me off your calling list and you're stilling me if I get one more, I'm contacting a lawyer."

41. Despite such a clear and unequivocal request for a cessation of calls, Conn persisted in placing robo-calls to Plaintiff's cellular telephone.

42. On or about March 21, 2019 at 4:11 PM, Plaintiff yet again went to Conn's website and sent an email to Conn (to which he received confirmation #826068 as to his submittal) which read in part: "Stop calling me. I have sent call logs to your Facebook message where I can attach photos. You call me 5 to 8 times a day."

43. Despite this clear and unequivocal request for the calls to stop, Conn continued to bombard Plaintiff's cellular telephone number with automated calls dialed by its automatic telephone dialing system that same day and every day following it.

44. On several other occasions Plaintiff again visited Conn's Facebook page and sent messages to Conn requesting a cessation of calls, one of which read in part: "You are still calling me. Many times a day. Your customer service department can't figure out how not to but it is funny that you call me and hang up right away so you know this is not a number you're supposed

7

to be calling. I'm asking you again do not call me. All of these calls are being logged, you are breaking the law by calling me and I am going to call a lawyer."

45. Conn placed robo-calls to Plaintiff from telephone number 843-279-5911 on or about, March 22, 2019 at 3:47 PM and 5:39 PM and on or about, March 26, 2019 at 12:21 PM and 1:32 PM.

46. Conn placed robo-calls to Plaintiff from telephone number 843-279-5904 on or about, March 25, at 11:34 AM, 12:41 PM, 2:40 PM, 4:07 PM and 5:24 PM.

47. Conn placed robo-calls to Plaintiff from telephone number (727) 330-3948 on or about, March 25, 2019 at 12:51 PM and on or about, March 26, 2019 at 2:17 PM and 2:18 PM.

48. Plaintiff's numerous verbal and written requests for the telephonic harassment to end were ignored.

49. Conn has a corporate policy to use its automatic telephone dialing system and pre-recorded/artificial voice calls to harass and intimidate individuals like Plaintiff.

50. Conn's policies and procedures are entirely toothless and are created simply for purposes of litigation. In reality, Conn's agents and compliance teams ignore do not call requests from consumers and allow those consumers to be harassed by non-stop robo-calls.

51. Conn has been sued for violating the TCPA hundreds of times by consumers all across the country.

52. Conn was ordered to pay a sum of $311,000, which included treble damages of $1,500 per call, in the matter of the Arbitration between *Fred Summers and Conn Appliances, Inc.*, which contained allegations similar to the ones in the matter at hand, AAA Case No.: 01-16-0004-1183.

53. Conn was ordered to pay a sum of $215,500 in the matter of the Arbitration between *Johnnie Williams, Jr. and Conn Appliances, Inc.,* AAA Case No.: 01-17-0001-5149.

54. Conn was ordered to pay a sum of $459,000 in the matter of the Arbitration between *Veronica Davis and Conn Appliances, Inc.,* AAA Case No.: 01-17-0006-8007. There, each violation of the TCPA was found to be willful and knowing, thereby entitling the Claimant to treble damages of $1,500 for each of the 306 violations of the law committed by Conn.

55. Conn has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to the Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or Conn's agents to remove the number.

56. Conn's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Conn they do not wish to be called.

57. Conn has numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop.

58. Conn has admitted in legal documents filed with the United States Securities and Exchange Commission that it utilizes a Noble Systems Predictive Dialer, which is a type of automatic telephone dialing system.

59. Conn has had numerous complaints against it from consumers across the country asking to not be called; however Conn continues to robo-call these individuals.

60. Conn's corporate policy provided no real means for Plaintiff to have his number removed from Conn's call list.

61. Conn's business model is designed to abuse consumers with robo-calls in an effort to pressure them into making their payments.

62. Conn has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

63. Not one of Conn's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

64. Conn willfully and/or knowingly violated the TCPA with respect to Plaintiff as to each robo-call made to Plaintiff's cellular telephone as Conn never possessed Plaintiff's express consent to be called.

65. From each and every call placed without express consent by Conn to Plaintiff's cellular telephone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

66. Conn's non-stop robo-calls drained Plaintiff's cellular telephone battery and occupied its ability to receive other calls.

67. Conn's non-stop robo-calls wasted Plaintiff's time. For answered calls, Plaintiff had to waste time explaining that Conn had the wrong number. For missed calls, Plaintiff had to waste time reviewing missed call notifications on his phone. For pre-recorded messages, Plaintiff had to waste time listening to the message. Further, Plaintiff wasted time sending multiple written "do not call" requests to Conn that were ignored.

68. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Conn never had Plaintiffs permission to call his cellular telephone yet continued to bombard him with robo-calls for no legitimate purpose.

69. Plaintiff is a residential real estate agent. Conn's unwanted and harassing robo-calls interrupted Plaintiff during showings, listing appointments, and phone calls with clients.

Plaintiff will testify that these calls were "very distracting" and that they upset him tremendously.

70. Plaintiff was affected by Conn's robo-calls in a personal and individualized way, including but not limited to the frustration, stress, and anger he experienced as a result of the unwanted calls.

## COUNT I
### (Violation of the TCPA)

71. Plaintiff fully incorporates and re-alleges paragraphs one (1) through seventy (70) as if fully set forth herein.

72. Conn willfully violated the TCPA with respect to Plaintiff, specifically for each of the ATDS initiated robo-calls made to Plaintiff's 813-area code cellular telephone without having the Plaintiff's prior express consent.

73. Despite Plaintiff demanding that the calls stop on multiple occasions, Conn continued its pattern of harassment and abuse, and made it clear to Plaintiff that Conn would call from its automatic telephone dialing system as often as it liked until Plaintiff directed them towards the individual known only as "Lisa."

74. There is no way to describe Conn's violation of the law other than willful and knowing. As a result, Plaintiff should be awarded treble damages of $1,500 per violation for the harassment and abuse Conn put him through.

75. As of the filing of this complaint, Conn is still making up to eight (8) robo-calls to Plaintiff's cellular telephone on a daily basis.

76. Conn repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system and pre-recorded messages and an

artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Conn Appliances, Inc., for statutory damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

### COUNT II
### (Violation of the FCCPA)

77. Plaintiff fully incorporates and re-alleges paragraphs one (1) through seventy (70) as if fully set forth herein.

78. At all times relevant to this action Conn is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

79. Conn has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or "alleged" debtor or any member of his or her family with such frequency as can reasonably be expected to harass the debtor or his or her family.

80. Conn called Plaintiff up to eight (8) times per day, on back-to-back days, despite Plaintiff repeatedly requesting the calls stop both verbally and in writing.

81. Conn's calls came at a harassing rate that sometimes included multiple robo-calls within an hour.

82. Conn has violated Florida Statute § 559.72(9) by attempting to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows the right does not exist.

83. Conn called Plaintiff up to eight (8) times per day, on back-to-back days, despite Plaintiff repeatedly advising Conn that the debt in question did not belong to him and that he did not know the alleged debtor, "Lisa."

84. Despite actual knowledge that Plaintiff did not owe any debt to Conn, Defendant continued to bombard Plaintiff with up to eight robo-calls per day to his cell phone in an attempt to collect a debt. Plaintiff was concerned that the debt had somehow involved him.

85. Conn's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

86. Conn's unwanted and harassing robo-calls repeatedly interrupted Plaintiff while he worked and had a negative impact on Plaintiff's job performance.

87. Conn's unwanted and harassing robo-calls wasted Plaintiff's time, including but not limited to time he spent speaking to Conn's agents, time he spent requesting Conn's stop calling him, and time he spent checking missed call notifications on his cellular telephone and listening to Defendant's voicemails.

88. Conn's unwanted and harassing robo-calls violated Plaintiff's privacy rights and impacted all aspects of his daily life, including work, personal time, and family time.

89. Conn's unwanted and harassing robo-calls caused Plaintiff to suffer from unwanted and unnecessary stress, anger, and frustration.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Conn Appliances, Inc., for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

*/s/ Octavio Gomez*
Octavio Gomez, Esquire
Florida Bar No.: 0338620
*/s/ Frank H. Kerney III*
Frank H. Kerney III, Esquire
Florida Bar No.: 0088672
Morgan & Morgan, Tampa, P.A.
201 N. Franklin Street, Suite 700
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402
Primary : TGomez@ForThePeople.com
FKerney@ForThePeople.com
Secondary: LDobbins@ForThePeople.com
SNazario@ForThePeople.com
*Attorneys for Plaintiff*